The opinion of the court was,delivered by
DeBlanc, J.
In March 1870, two brothers — John J. .and. Jackson *1291 B. Hodges, now dead, formed a planting partnership which lasted until the fall of 1873. "W. E. Hamilton, one of the plaintiffs testified that John was the business manager of that partnership, and fhat Jackson had very little to do with it. In the early days of March 1870, plaintiffs-opened separate accounts with the aforesaid partnership and with each of its individual members, and — on the 18th of August 1871 they received from John J. Hodges, in full settlement of their accounts, two notes, one for $2242.59c, which fell due on the 1st of March 1872, and was paid out of the proceeds of cotton grown by and belonging to the-partners, the other for $2421.49c, which matured on the 1st of March 1873.
This suit is brought on the last mentioned of said notes, which is in these words : “ We promise to pay to the order of Hamilton & Oo. twenty four hundred twenty one 49-100 dollars, with interest at 8 per cent from maturity until paid, value received.
(Signed) Jwo. J. & J. B. Hodges,
and “ Jno. J. Hodges.”
The executor of the last will of Jackson B. Hodges, avers that said' note was not signed by the deceased, but by his brother John, without said deceased’s knowledge or consent, and for an old indebtedness of John to plaintiff, which accrued partly before and partly after they became partners, and did not enure to the benefit of their partnership.
To this defence, plaintiff’s reply is: that the contracting of the indebtedness was authorized, and — if it was not — that it did enure to the-benefit of the partnership, and that the settlement of that indebtedness-by the delivery of the two notes herein mentioned was ratified by Jackson B. Hodges.
As to the fact of the alleged ratification, what evidence is relied upon? It was shown that, in the statements of accounts rendered to the partnership, mention is made that the individual liabilities of its members was merged into the partnership accounts, which. — according-to W. E. Hamilton’s declaration — their firm always rendered .to John J. Hodges, who — it seems — had complete control of the plantation. At his-death, they were found among his papers in the house occupied by the-two brothers. They were there in a desk, but to whom the desk belonged, by whom it was used, whether it was locked or unlocked, whether Jackson had access to it, or ever opened it, the witness was not. asked and did not tell. That circumstance is not even an entire link,, but merely the fraction of a link in the chain of presumptions which, would justify the conclusion that Jackson B. Hodges has authorized that merging of accounts or ratified the settlement thus made by his-brother.. ...
Were Hamilton and Co., or John J. Hodges, empowered — the first- *1292 to merge, the latter to sanction the merging of three distinct liabilities, ’.and to burden one of three debtors — the partnership — with the separate liabilities of the two others ? They were not.
“No member of an ordinary partnership can bind his co-partner, ■unless he was given the power to do so, either specially or by articles of partnership, or unless it be proved that the partnership was benefited by the transaction.” R. C. 0. 2872 (O. C. 2843) 2874 (2845).
In Dumartrait, ad., et al. vs. Gay et al, this court properly held ■that, “when co-partners in an ordinary partnership deny that they are liable for the contract made by one of them, the creditor, who seeks to bold them responsible under it, must prove one of two things: either ■that the contract was authorized by them, or that it enured to their benefit.” In this we cannot see any great hardship. It is the duty of every one who deals with a member of an ordinary partnership who •shows no authority to bind his co-partners, to know at his peril that the transaction is to enure to the benefit of the partnership.
1 R. R. 64 — 5 M. 684 — 1 L. 390 — 6 L. 304 — 13 L. 197 — 14 L. 364 — 15 X. 496.
“ Where any creditor of one member of a-firm takes from his own debtor, either in payment or as security for his debt, the paper of the ■firm, the presumption of law is, that he took it in fraud of the firm: and without proof of their interest, or their assent and authority, which may be circumstantial, the firm will not be held.”
Parsons on Contracts (6th ed.) vol. 1,184.
Hamilton and Co. either knew, or — by merely inquiring — could have ■ascertained that John J. Hodges had no authority to bind the partner■ship for a debt which it had not contracted, which — on the.books of the -creditor — was not charged against it, but charged against other parties, by special instruction from them to the creditor. In so doing, they participated in the execution of an act, which they knew, or could — without •difficulty — have ascertained was, not only not authorized, but unjust, the partnors’ individual liabilities not being equal.
Did that .unauthorized act enure to the benefit of the partnership ? "W. E. Hamilton swore that two'drafts of John J. Hodges, one for $761.03c. ■the other for $277.75c, were given to close cash advances made in the months of February and March 1870. In February the planting partnership did not exist. In an account rendered to John J. Hodges personally — on the 20th of June 1870 — these two drafts are charged against him, and — at the date those'drafts were given — they had advanced to ■the planting partnership, according to their own account, the sum of ■forty dollars.
Was it through mistake that those drafts were charged to John J. Hodges ? If 'it was, we aré at a loss to imagine how it is that, in the *1293 account rendered to the partnership and which bears the same date as. that rendered to John-J. Hodges, those drafts are not mentioned. At. that date — the 20th of June 1870 — the planting, partnership was owing Hamilton & Oo — including principal, interest and commission — four-hundred and thirty-two dollars and seven cents: this is shown by their written statement. The account of the partnership was .added to that of John J. Hodges amounting to $1723.89c, and — on the 12th of September' 1870 — for those united claims, interest thereon at eight, and commission at five per cent — John J. Hodges gave and Hamilton & Co. accepted the note of the planting partnership. This may be, but it oertainly does not look right.
How is this explained by one of the plaintiffs? He testified — on the trial — that account No. 13 — that rendered to John J. Hodges personally— was but a cash statement, and that he was satisfied that nearly, if not all of it, was for the benefit of the partnership. He was confirmed in his belief by the fact that statement Nó. 12, that in which the accounts-of the partnership and of John J. Hodges were merged in a grand total, was accepted by the partnership, and its note given for that mixed indebtedness. That indebtedness amounted then to $2343.05c.
W. E. Hamilton confessed on the stand that he could not swear positively that any of the items in the account.made in John J. Hodges* name and rendered to him, were for the use and benefit of the partnership, but he believed it.
By request of John J. Hodges, S. J. Ward paid, of the mixed indebtedness, to Hamilton & Go., and out of the proceeds of the sale of cotton belonging to the planting partnership, the sum of 1240450c. When he made that payment, Ward was the factor of said partnership, but he was not aware that Jackson B. Hodges knew that such a payment was to be and had been made.
As concerns the succession of Jackson B. Hodges, the note sued upon is twice invalid: it was given without authority, and — so far as it appears by the record — it is without consideration.
The evidence tending to show that said deceased had been informed of the settlement made by his brother John, had not objected to, but acquiesced in what he had done, was properly excluded: if admitted without objection, it is doubtful that it could have been considered. Whatever is done in contravention to a prohibitory law is null, and the law merely prohibits parol evidence of the pretended promise to pay the debt of a third person, but in all such cases the promise to pay shall be proved by written evidence, signed by the party to be charged, or his specially authorized agent or attorney-in-fact.
C. C. art. 12. 24 A. p. 325. 23 A. 747.
It has not been shown that Jackson B. Hodges knew that the indi *1294 vidual indebtedness of his brother was included in either the accounts or the notes, or that he had been informed of the character of the ■charges which — in a few months — had swelled to extravagant proportions the liability of the planting partnership to the firm of Hamilton & Co.
“ The facts from which the ratification of a contract is to be deduced, must evince such intention clearly and absolutely,” and the validity of any ratification — express or tacit — can legally rest but upon a previous and full knowledge of the contents of the unauthorized or defective acts ~to which the ratification is to impart a posthumous and retroactive validity.
13 L. 175 — 6 R. 184.
The reconventional demand can not be allowed. If Jackson’s share in the proceeds of the sale of the cotton had been misapplied, it was done under the instructions of his brother and partner, and his legal representatives have no recourse — for the recovery of the difference which they claim — but against his succession, and not against one recognized by him as his creditor, and to whom he has — right or wrong — paid what he had acknowledged he owed him.
It is, therefore, ordered, adjudged and decreed that — as regards the succession of Jackson B. Hodges — the judgment appealed from, signed on the 22d day of April 1878, is annulled, avoided and reversed, and plaintiffs’ demand rejected at their costs in both courts.